1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10  UNITED STATES OF AMERICA,                    CASE NO. 15cr808-BEN
11                              Plaintiff,
                                                 ORDER DENYING
            vs.                                  MOTION TO DISMISS
12                                               INDICTMENT
13  JOEL LUQUE-RODRIGUEZ,
14                              Defendant.

15          Now before the Court is Defendant's Motion to Dismiss the Indictment (filed
16  May 4, 2015).  Upon review, this Court finds the underlying removal to be valid.
17  Therefore, the motion to dismiss the indictment is denied.

18                              **I.  BACKGROUND**

19          Defendant is currently charged with the crime of Attempted Reentry of a
20  Removed Alien in violation of 8 U.S.C. § 1326(a) and (b).  From the record before
21  the Court, it appears that there is no dispute as to the following salient facts.

22          Defendant is a citizen of Mexico.  He has never had a lawful immigration
23  status.  He came to the United States in the late 1980s; he was about 20 years old.
24  According to the Government, on February 5, 1992, he was convicted in Los
25  Angeles, California of violating California Penal Code § 487h(a), Grand Theft, and
26  sentenced to 30 days in jail and 24 months of probation.  On February 25, 1994, he
27  was convicted in Los Angeles, California of violating California Penal Code
28  § 496(a), Receiving Stolen Property, and sentenced to three years in prison.

This motion to dismiss focuses on a removal order springing from his next conviction (in the year 2000). In a five-count Information, Defendant was charged with violating California Health & Safety Code § 11379.6(a), Manufacturing, Compounding, Converting, Producing, etc., a Controlled substance (count 1), Health & Safety Code §11383(c)(1), Possession With Intent to Manufacture Methamphetamine (count 2), Health & Safety Code § 11378, Possession For Sale of a Controlled Substance (count 3), Penal Code § 273a(a), Child Endangerment (count 4), and Penal Code § 273a(a), Child Abuse (count 5).

Luque-Rodriguez pleaded guilty to counts 1 and 4. He was convicted and sentenced on April 17, 2000, and received a sentence of three years in prison. Based on his count 1 conviction for violating § 11379.6, in 2001 the Government issued a Notice of Intent to Issue a Final Administrative Removal Order. He did not contest the removal. He was ordered removed to Mexico. In January 2015, he was arrested inside the United States and charged with attempted reentry after having been previously removed.

## II. CHALLENGING THE UNDERLYING REMOVAL ORDER

Defendant has moved to dismiss the indictment pursuant to 8 U.S.C. § 1326(d). He argues that his removal order in 2001 was fundamentally unfair. It was unfair, he argues, because his state court conviction for violating § 11379.6 did not qualify as an aggravated felony. And if it was not an aggravated felony, then the conviction did not support the removal order. Because Defendant has not attempted to establish prejudice, the prejudice requirement is discussed first. Fundamental fairness is discussed second.

### A. Collateral Attack Under §1326(d)

An individual charged with illegal reentry under 8 U.S.C. § 1326 has a right to challenge the removal that underlies the criminal reentry charge. In the typical case, the criminal charge may be dismissed if the three prongs of § 1326(d) are satisfied.

1
2
3
4
5

> Section 1326(d) . . . . authorizes collateral attack on three conditions: (1) that the defendant exhausted available administrative remedies; (2) that the removal proceedings deprived the alien of the opportunity for judicial review; and (3) that the removal order was fundamentally unfair.  Removal is fundamentally unfair, in turn, if (1) a defendant's due process rights were violated by defects in his underlying removal proceeding, and (2) he suffered prejudice as a result of the defects.

6
7
8
9
10
11
12
13

*United States v. Garcia-Santana*, 774 F.3d 528, 532-33 (9th Cir. 2014) (internal quotation marks and citations omitted).  "To satisfy the third prong—that the order was fundamentally unfair — *the defendant bears the burden* of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201-02 (9th Cir. 2014) (citation omitted) (emphasis added).  In the case of a non-lawful permanent resident and an expedited removal order, the review is limited to "some meaningful review," as discussed below.

14

### B.  Exhaustion and Deprivation

15
16
17
18
19

Defendant contends that he has exhausted the administrative remedies, that he was deprived of judicial review, and that he need not show prejudice.  Because Defendant's removal was an expedited removal, Ninth Circuit precedent compels the conclusion that administrative review was exhausted and judicial review was deprived.  As stated in *Raya-Vaca*:

20
21
22
23
24
25
26
27
28

> [T]he statute governing expedited removal proceedings afforded Raya–Vaca no opportunity for administrative or judicial review. *See, e.g.,* 8 U.S.C. § 1225(b)(1)(C) ("Except as provided in the subparagraph on credible-fear interviews, a removal order . . . is not subject to administrative appeal . . . ."); *id.* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . . , the officer shall order the alien removed from the United States *without further hearing or review . . . .*"); *see also Barajas–Alvarado,* 655 F.3d at 1082 ("The Immigration & Nationality Act (INA)  precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order."). We therefore conclude that Raya–Vaca exhausted all available administrative remedies and was deprived of the opportunity for judicial review.

1  *Raya-Vaca*, 771 F.3d at 1202.  However, a defendant still bears the burden of
2  establishing prejudice from a fundamentally unfair removal.  *Id.*

3  ## C.  Prejudice

4  Defendant contends he is relieved of the burden of proving prejudice, if he
5  can show that his removal order was based upon an erroneous conclusion that his
6  §11379.6 conviction qualified as an aggravated felony.  Def.'s Mot. to Dismiss, at 3
7  (citing *United States v. Aguilera-Rios*, 769 F.3d 626, 637 (9th Cir. 2014) and
8  *Noriega v. Ashcroft*, 335 F.3d 874, 884 (9th Cir. 2003)).  Defendant argues, "where
9  a person is not legally removable on the grounds alleged by immigration, the entry
10 of the illegal order is, in itself, a due process violation and prejudice."  *Id.*
11 Defendant is partly correct.

12 ### *1.  Prejudice Can Be Presumed for LPRs*

13 Defendant correctly describes the rule as it applies to regular removal
14 proceedings of aliens who hold lawful permanent resident status.  The main case
15 Defendant relies on is *Aguilera-Rios*.  *Aguilera-Rios* concerned a lawful permanent
16 resident alien deported on the basis of a fundamentally unfair order.  The Ninth
17 Circuit explained why, in that situation, prejudice can be presumed.  The court
18 explained that the defendant "would have had the *right* to be in the United States, as
19 a lawful permanent resident" but for the legally erroneous removal order.  *Aguilera-*
20 *Rios*, 769 F.3d at 633 (emphasis in original); *see also United States v. Martinez*, 786
21 F.3d 1227 (9th Cir. 2015) (presuming prejudice for a lawful permanent resident
22 alien removed on the basis of a mis-classified aggravated felony conviction); *United*
23 *States v. Camancho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) (same).  The key to
24 the presumed prejudice holding lies in the alien's *right* to otherwise remain in the
25 United States due to their lawful permanent resident status.[1]

26
27
─────────────────────

28 [1]Defendant also cites to *Noriega v. Ashcroft*, but that case stands only for the
proposition that a *sua sponte* BIA removal order issued in an area beyond its

- 4 -

### 2.  *Prejudice Must Be Proven for Other Aliens*

Mr. Luque-Rodriguez has never been a lawful permanent resident.  If, as Defendant contends, his removal in 2001 was the result of a legally incorrect order, but he had no *right* to continue to remain in the United States, then legal prejudice cannot be presumed.  Prejudice must still be proven.  And proving prejudice remains the defendant's burden.  *Raya-Vaca*, 771 F.3d at 1202.

The removal documents indicate that Luque-Rodriguez was removed through an expedited removal proceeding sanctioned by 8 U.S.C. § 1228(b).  Section 1228(b) provides for the expedited removal of aliens who are not permanent residents and who have been convicted of an aggravated felony.  Luque-Rodriguez's removal order, which he now collaterally attacks, was the product of the expedited removal procedure.  *See* Def.'s Mot. to Dismiss, Exhs. A & B; *see also United States v. Hernandez-Vermudez*, 356 F.3d 1101 (9th Cir. 2004) (holding expedited administrative removal set out in § 1228(b) applies to aliens who were not lawfully admitted for permanent residence or paroled and who entered the United States without inspection).

### a.  *"Some Meaningful Review"*

It should be noted that Congress intended that expedited removal orders would *not* be open to collateral attack in a § 1326 case.  For expedited removal orders, Congress specifically eliminated from federal court jurisdiction the authority to hear a § 1326(d) motion.  *See* Title 8 U.S.C. § 1225(b)(i)(D) (a court "shall not have jurisdiction to hear any claim attacking the validity" of an expedited removal order in a § 1326 prosecution).  Nevertheless, in this circuit since 2011, a defendant is permitted "some meaningful review" of an expedited removal order when the order is used as an element for a reentry offense.  *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1983 (2012) (holding § 1225(b)(i)(D) unconstitutional "to the extent it prohibits 'some

jurisdiction, is a legal nullity.

1    meaningful review' in a § 1326 criminal prosecution").

2                    ***b. Due Process Violation and Prejudice***

3           The problem here is that *Barajas-Alvarado* still requires the showing of

4    prejudice to succeed in a collateral attack through a motion to dismiss.  The court

5    writes,

6           Accordingly, we must conclude that § 1225(b)(i)(D) is unconstitutional
            to the extent it prohibits some meaningful review in a § 1326 criminal
7           prosecution of a claim that the proceeding that resulted in the expedited
            removal order was fundamentally unfair in that the deportation
8           proceeding violated the alien's due process rights *and the alien*
9           *suffered prejudice as a result.*

10   *Id.* (internal quotations and citations omitted) (emphasis added); *see also United*

11   *States v. Lopez-Vasquez*, 227 F.3d 476, 485-86 (5th Cir. 2000) (described by

12   *Barajas-Alvarado* as a case where an alien's collateral challenge to an expedited

13   removal order failed because he did not suffer any prejudice).  In *Barajas-Alvarado*,

14   the Ninth Circuit explained that even if it found a due process violation, "we must

15   still consider whether such error resulted in prejudice." 655 F.3d at 1089.  Because

16   he could not establish prejudice, the Ninth Circuit affirmed the denial of the

17   defendant's § 1326(d) motion to dismiss.  *Id.* at 1091 ("Barajas-Alvarado failed to

18   establish that it was plausible such relief would be granted, and therefore failed to

19   establish any prejudice resulting from the alleged procedural violations. . . . We

20   therefore affirm the district court's denial of his motion to dismiss the indictment

21   and the subsequent judgment and sentence.").

22          Ninth Circuit decisions reviewing expedited removal orders since *Barajas-*

23   *Alvarado* – removal orders which *per se* apply only to aliens who are not permanent

24   residents – have likewise required a defendant to establish prejudice.  For example,

25   in *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1177 (9th Cir. 2015), the court

26   explained:

27          Garcia's predicate removal was an expedited removal at the
            border.  The Constitution does not entitle "non-admitted aliens" to "any
28          procedure vis-à-vis their admission or exclusion."  "Whatever the

1
2
3

procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." Thus, the regularity of Garcia's expedited removal proceeding is judged solely by the procedures set out in 8 U.S.C. § 1225(b) and 8 C.F.R. § 1235.3(b).

4
5
6

*To demonstrate prejudice* from a due process violation, Garcia must show that, absent the violation, it was plausible he would have obtained discretionary relief from removal. The only form of discretionary relief available in expedited removal proceedings is withdrawal of application for admission.

7   (citations omitted) (emphasis added); *see also Raya-Vaca*, 771 F.3d at 1206 ("To

8   succeed in demonstrating that the 2011 expedited removal order was fundamentally

9   unfair, Raya-Vaca *must also establish that he suffered prejudice* as a result of the

10  entry of the order.") (emphasis added); *United States v. Barragan-Camarillo*, 460 F.

11  App'x 637, 639 (9th Cir. 2011) ("To the extent that Barragan–Camarillo brings an

12  as-applied challenge to his own expedited removal order, his claim fails because,

13  even if he could show that his due-process rights were violated, he *has not shown*

14  *any resulting prejudice*.") (emphasis added).

15

### c. Withdrawal of Application for Admission

16  It is not immediately evident what form of prejudice Defendant would argue

17  here. Luque-Rodriguez does not claim that the Government failed to advise him of

18  the only form of discretionary relief available to him as a non-admitted, non-

19  paroled, non-lawful permanent resident: withdrawal of his application for

20  admission.[2] But even that would not matter. Unlike in regular removal proceedings

21  concerning lawful permanent residents, an immigration officer has no affirmative

22  duty to inform a non-lawful permanent resident applicant that he may ask to

23  withdraw his application for admission. *United States v. Sanchez–Aguilar,* 719 F.3d

24  1108, 1112 (9th Cir. 2013) (rejecting for lack of prejudice, a § 1326 collateral attack

25  on a prior expedited removal order where there was no advice of discretionary

26  relief); *United States v. Alarcon-Tapia*, 599 F. App'x 278, 279 (9th Cir. 2015)

27

28  [2]An alien who is present in the United States who has not been admitted is deemed by statute to be an "applicant for admission." 8 U.S.C. § 1225(a)(1).

("[A]liens in expedited removal proceedings do not have a due process right to be informed of their ability to withdraw their application for admission. . . ."); *United States v. Bayardo-Garcia*, 590 F. App'x 660, 662 (9th Cir. 2014) (same).

### 3. Without Demonstrating Prejudice, Collateral Attack Fails

To sum up, Defendant has the burden of establishing prejudice.  Defendant's decision to stand on a presumption of prejudice is fatal to his collateral attack, especially since the collateral attack of an expedited removal order directed to a non-lawful permanent resident is a limited attack.  Even if he succeeds at demonstrating that the § 11379.6 conviction was not an aggravated felony, his collateral attack will fail without establishing prejudice.  *C.f. United States v. Reyes-Bonilla*, 671 F.3d 1036, 1052 (9th Cir. 2012) (holding that violation of right to counsel in expedited removal hearing was not inherently prejudicial and without demonstrating a plausible claim to relief, alien was not actually prejudiced).

### D.  Fundamental Fairness

Defendant must show that the expedited removal order was fundamentally unfair and resulted in prejudice.  He has not shown prejudice.  Neither can he show unfairness.  He argues that his April 2000 state court felony conviction for violating California Health & Safety Code § 11379.6(a), Manufacturing, Compounding, Converting, Producing, Etc., a Controlled Substance, does not qualify as an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B) ("The term 'aggravated felony' means – illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18).").  To determine whether an offense is an aggravated felony, we use the categorical and modified categorical approaches of *Taylor v. United States,* 495 U.S. 575 (1990), and *Shepard v. United States,* 544 U.S. 13 (2005).

### 1. Aggravated Felony Under § 1101(a)(43)(B)

A drug trafficking offense is an aggravated felony.  However, Defendant argues that his conviction is not the equal of a federal generic drug trafficking

1    offense.  He argues that the statute of conviction is overbroad and indivisible,

2    rendering the state conviction ineligible for use of the modified categorical

3    approach.  If the modified categorical approach may be used, however, then the plea

4    colloquy and other judicially noticeable documents make clear that Defendant's

5    conviction qualifies as a generic federal drug trafficking offense and thus an

6    aggravated felony which legally supports his 2001 removal order.  That in turn,

7    undermines his motion to dismiss.  Having now reviewed these documents, this

8    Court finds that the statute is divisible[3] and the modified categorical approach may

9    be used.[4]  Under that approach, Defendant's state drug conviction is an aggravated

10   felony.

11          The Supreme Court describes the analytical approach to be used:

12          The INA defines "aggravated felony" to include a host of
        offenses.  § 1101(a)(43).  Among them is "illicit trafficking in a
13      controlled substance."  § 1101(a)(43)(B).  This general term is not
        defined, but the INA states that it "includes a drug trafficking crime (as
14      defined in section 924(c) of title 18)."  In turn, 18 U.S.C. § 924(c)(2)
15      defines "drug trafficking crime" to mean "any felony punishable under
        the Controlled Substances Act," or two other statutes not relevant here.
16      The chain of definitions ends with § 3559(a)(5), which provides that a
        "felony" is an offense for which the "maximum term of imprisonment
17      authorized" is "more than one year."  The upshot is that a noncitizen's
        conviction of an offense that the Controlled Substances Act (CSA)
18      makes punishable by more than one year's imprisonment will be
19      counted as an "aggravated felony" for immigration purposes.  A
        conviction under either state or federal law may qualify, but a "state
20      offense constitutes a 'felony punishable under the Controlled
        Substances Act' only if it proscribes conduct punishable as a felony
21      under that federal law."

22

23   _____

24      [3]*Coronado v. Holder,* 759 F.3d 977, 984-85 (9th Cir. 2014), *cert. denied,* 135 S.

25   Ct. 1492 (2015), explains why under *Descamps v. United States*, 133 S. Ct. 2276

26   (2013), California Health & Safety Code § 11377(a) is divisible.  The same reasoning

27   applies to § 11379.6.

28      [4]The general mechanics of the *Taylor/Shepard* approach has been described in

     countless decisions and need not be repeated here.

1  *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1683 (2013) (quoting *Lopez v. Gonzales*,

2  549 U.S. 47, 60 (2006)).  *Moncrieffe* is not controlling because this case is not about

3  a conviction for simple possession of marijuana.  But *Moncrieffe*'s analysis of INA

4  § 1101(a)(43)(B) applies to this case.  *See also Lopez-Jacuinde*, 600 F.3d 1215,

5  1217 (9th Cir. 2010) (describing twin prongs through which a state drug felony may

6  be classified as an aggravated felony under § 1101(a)(43)(B)).  This case is about

7  the California crime of manufacturing methamphetamine and whether a state

8  conviction constitutes a federal drug trafficking crime -- and thus an aggravated

9  felony.

10       Had the conviction been for possession-for-sale of methamphetamine, under

11  California Health & Safety Code § 11378, this would be an easy decision.  The

12  Ninth Circuit has already concluded that, though overbroad, California's related

13  § 11378 offense is divisible.  And with regards to methamphetamine, § 11378

14  qualifies as a deportable drug trafficking crime under § 1101(a)(43)(B).  *See United*

15  *States v. Valdavinos-Torres*, 704 F.3d 679, 689 (9th Cir. 2012).  The same

16  reasoning applies to Defendant's conviction for violating § 11379.6 by

17  manufacturing methamphetamine.

18       Under the modified categorical approach, a court may undertake a limited

19  examination of the *Shepard* documents in the conviction record to determine if there

20  is enough evidence to conclude the alien was convicted of the elements of the

21  generically defined crime.  *Id.* at 687.  In this case, the Government has provided

22  copies of the Information, a transcript of the plea colloquy, and the Abstract of

23  Judgment.  These records confirm that Luque-Rodriguez pleaded guilty to the

24  offense of manufacturing methamphetamine, a felony.  Manufacturing

25  methamphetamine qualifies as a drug trafficking crime as described in 21 U.S.C.

26  § 841(a)(1), because methamphetamine is a controlled substance listed in the federal

27  Controlled Substances Act.  Therefore, his conviction of the California § 11379.6

28  offense qualifies as a deportable drug trafficking crime under 8 U.S.C.

§ 1101(a)(43)(B), and is a proper basis for his removal order.  Because the Government was correct to deem the state conviction an aggravated felony, the removal order was not fundamentally unfair.

### 2. Fundamentally Fair Upon Some Meaningful Review

Alternatively, even if the strict modified categorical approach has not been satisfied, the documents of conviction are sufficient to satisfy the lesser standard of "some meaningful review" of an expedited removal order.  *United States v. Barajas-Alvarado*, 655 F.3d at 1087.  The "some meaningful review" standard concerns only whether the alien received due process in the constitutional sense and if not, whether there was legal prejudice.   Due process in the constitutional sense traditionally means giving one notice and an opportunity to be heard.  *LaChance v. Erickson*, 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard.").

Clearly, Luque-Rodriguez was given notice of the expedited removal process and an opportunity to be heard.  And the process was neither baseless nor a sham.  The process commenced upon Luque-Rodriguez's valid conviction for a felony drug offense in a California court where constitutional protections were afforded.  Luque-Rodriguez is precisely the type of non-admitted alien Congress wanted removed from the United States.  *Hernandez-Vermudez*, 356 F.3d at 1014 ("There simply is no denying that . . . Congress intended to expedite the removal of criminal aliens.") (citing *Taniguchi v. Schultz*, 303 F.3d 950, 958 (9th Cir. 2002) and *Zhang v. INS*, 274 F.3d 103, 108 (2d Cir. 2001) ("[I]t is beyond cavil that one of Congress's principal goals in enacting IIRIRA was to expedite the removal of aliens who have been convicted of aggravated felonies.")).  Luque-Rodriguez admitted the charge and consented to removal.

### 3. Not Overbroad and Indivisible

Luque-Rodriguez does not address any of that.  Instead, he asserts that the statute of conviction is overbroad and indivisible.  He claims it is overbroad in two

dimensions and indivisible in one.  He says that the California statute is overbroad in that it includes substances controlled under state law that are not controlled under federal law.  Several courts have agreed, but also agree that *methamphetamine* is controlled under both California and federal law.  *E.g., Ruiz-Vidal,* 789 F.3d 1065 (9th Cir. 2015) (holding California Health & Safety Code § 11377(a) is overbroad but divisible and possession of methamphetamine unlawful under both state and federal law, thus an aggravated felony drug trafficking offense); *Coronado*, 759 F.3d at 984-85 (same); *S-Yong v. Holder*, 600 F.3d 1028, 1034 n.5 (9th Cir. 2010).

Although the reasoning of *Ruiz-Vidal* appears to foreclose any other argument, Luque-Rodriguez also argues that the *mens rea* element is overbroad and indivisible.  This is so, as the argument goes, because one can be convicted of the § 11379.6 state offense by knowingly and intentionally manufacturing a *California*-controlled substance without knowing or intending to manufacture a *federal*-controlled substance.  Luque-Rodriguez contends, "[s]ection 11379.6's intent requirement is also overbroad because it is tied to California controlled substance schedules . . . . Section 11379.6 is indivisible as to the overbroad elements as a jury does not need to unanimously agree as to the controlled substance that would be manufactured or that a defendant knew that the substance was controlled under federal law."  Reply to Govt's Resp., at 2.  This new theory has no case yet to support it.

### 4.  Hypothetical, But Not Realistic Probability

The contention is flawed because to be meritorious, the overbroad-but-indivisible argument must be a realistic probability, according to the Supreme Court.

> Moreover, in our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. *It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.*  To show that realistic probability, an offender, of course, may show that the statute was so

- 12 -

1
2

applied in his own case.  But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

3

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (emphasis added).

4

Defendant, here, has not shown that § 11379.6 was applied to his own case in a way

5

that falls outside the generic definition of a felony drug trafficking offense.  So, the

6

first avenue for showing a realistic probability comes to a dead end.  *Id.* ("To show

7

that realistic probability, an offender, of course, may show that the statute was so

8

applied in his own case.").  The second avenue also comes to a dead end because

9

Defendant has not pointed to other cases in which the California state courts applied

10

this statute in the special (nongeneric) manner for which he argues.  *Id.* ("But he

11

must at least point to his own case or other cases in which the state courts in fact did

12

apply the statute in the special (nongeneric) manner for which he argues.").

13

        Luque-Rodriguez argues that there is one state decision where a defendant

14

was convicted of manufacturing methamphetamine under §11379.6 by

15

manufacturing the precursor chemical of ephedrine.  *See California v.*

16

*Scheidmantel*, No. F056332, 2010 WL 1051162 (Cal. Ct. App. Mar. 23, 2010).  But

17

the defendant in that case was not convicted of the manufacturing offense by virtue

18

of accidentally extracting the precursor.  Like federal law, California courts require

19

for a conviction proof that a defendant intended to manufacture a precursor with

20

intent to manufacture a controlled substance.  *Id.* at *6 ("[I]f he extracted ephedrine

21

without the requisite mental state, he was not guilty of a crime; if he had the

22

required mental state, he was necessarily guilty of the completed crime of violation

23

of § 11379.6, subdivision (a)."); *see also California v. Coria*, 21 Cal. 4th 868, 880

24

(1999) (for conviction under § 11379.6, "[m]erely engaging in chemical synthesis

25

[of ephedrine] is not enough; the defendant must have knowledge of the facts which

26

make the chemical synthesis unlawful, *i.e.*, that methamphetamine is being

27

manufactured.").

28

        *United States v. Reyes-Mendoza*, 665 F.3d 165 (5th Cir. 2011), does not help

- 13 -

his argument.  *Reyes-Mendoza*, a Fifth Circuit decision,  addressed a different definition of a drug trafficking offense  – one found in Sentencing Guideline § 2L1.2(b)(1)(A)(i).  It concluded that the Sentencing Guideline definition of "manufacturing" did not include the manufacturing of a precursor to a controlled substance.  *Id.* at 168 ("a plain reading . . . and caselaw point . . . to the exclusion of manufacturing a precursor from § 2L1.2's definition of 'manufacture.'").  However, the terms of the Sentencing Guideline are quite different from the terms of the federal manufacturing statute in 21 U.S.C. § 843 of the Controlled Substances Act. Section 843 is included in the 8 U.S.C. § 1101(a)(43)(B) definition of an aggravated felony drug trafficking crime.  The drug offense described by § 843(a)(7) includes by its terms, the knowing or intentional "manufacture . . . [of a] chemical, product, or material which may be used to manufacture a controlled substance or listed chemical, knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance or listed chemical."  In other words, *Reyes-Mendoza* points down the wrong trail.

        This Court cannot find that California's law is "somehow special."  *Duenas-Alvarez*, 549 U.S. at 191.  Even if it could, it would be based upon improperly hypothesizing about the unusual case rather than the ordinary case which is to be the focus.  *Sandoval-Orellana*, 714 F.3d 1174, 1179 (9th Cir. 2013) (quoting *James v. United States*, 550 U.S. 192, 208 (2007)).  Using the modified categorical approach results in the uncontested conclusion that Defendant's conviction qualifies as an aggravated felony for purposes of 8 U.S.C. § 1101(a)(43)(B).  That finding, to borrow a phrase, "dooms any claim for relief based on a collateral attack of a predicate removal order in a prosecution for illegal reentry under 8 U.S.C. § 1326." *United States v. Galarza-Bautista*, 585 F. App'x 744, 744 (9th Cir.  2014), *cert. denied*, 135 S. Ct. 1724 (2015).  Because the Immigration and Naturalization Service was correct in deeming the state conviction an aggravated felony, the expedited removal order was not fundamentally unfair.  Alternatively, even if the

1    order was fundamentally unfair, Defendant has not carried his burden of showing

2    legal prejudice.

3                    **5.  *§ 11379.6 Conviction "Relates to a Controlled Substance"***

4           Finally, in addition to fact the § 11379.6 conviction for manufacturing

5    methamphetamine qualifies as an aggravated felony under § 1101(a)(43)(B) and

6    thus justified the expedited removal order, the conviction also justifies Luque-

7    Ramirez's removal because it is violation of a state law "relating to a controlled

8    substance" as defined in the Controlled Substances Act (specifically

9    methamphetamine).  Title 8 U.S.C. § 1227(a)(2)(B)(i) provides that an alien who is

10   convicted of a state crime that "relates" to a federally controlled substance, such as

11   methamphetamine, is deportable. *Mellouli v. Lynch*, 135 S. Ct. 1980, 1984-90

12   (2015) ("To trigger removal under § 1227(a)(2)(B)(i), the Government must connect

13   an element of the alien's conviction to a drug 'defined in § 802.'").

14   Methamphetamine is a controlled substance defined in § 802 of the Controlled

15   Substances Act.  Luque-Rodriguez was convicted of manufacturing

16   methamphetamine.  Manufacturing methamphetamine in violation of 21 U.S.C.

17   § 841(a) has been held to be both an aggravated felony under § 1101(a)(43)(B), and

18   "a violation of a law *relating to a controlled substance*" making an alien removable.

19   *Olivera-Garcia v. I.N.S.*, 328 F.3d 1083, 1085 (9th Cir. 2003) (emphasis added); *c.f.*

20   *Macias-Carreon v. Holder*, 716 F.3d 1286, 1288 (2013) (conviction under

21   California Health & Safety Code § 11359 for possession of marijuana-for-sale "is

22   categorically a crime '*relating to a controlled substance*' for immigration

23   purposes.") (emphasis added).

24          Since manufacturing methamphetamine in violation of § 841(a) is a "crime

25   relating to a controlled substance," it takes only a small step in reasoning to

26   conclude that a violation of § 11379.6 for manufacturing methamphetamine also

27   qualifies as a crime *relating to a controlled substance*.  That being the case, the state

28   conviction rendered Luque-Rodriguez removable and precludes any showing today

of prejudice from the 2001 removal order.  *C.f. United States v. Deleon-Torres*, 762 F. Supp. 2d 1209, 1213-14 (S.D. Cal. 2011) (denying § 1326(d) motion to dismiss for alien previously convicted of California Health & Safety Code § 11378(a) - selling/furnishing heroin).

### III.  CONCLUSION

Because his 2001 removal was based upon an aggravated felony, and a state crime relating to a federally controlled substance, Defendant's  Motion to Dismiss the Indictment is hereby denied.

DATED:  September 17, 2015

_____
Hon. Roger T. Benitez
United States District Judge